IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      LEWIS ROAD, LLC,                              Case No. 09-37672
                    Debtor.                               Chapter 11

## <u>**MEMORANDUM OPINION**</u>

The Court has before it the Chapter 11 Trustee's motion filed under Rule 60(b) of the
Federal Rules of Civil Procedure[1] as made applicable herein by Rule 9024 of the Federal Rules
of Bankruptcy Procedure (the "Motion") wherein the Trustee requests relief from certain
provisions of an order entered by the Court on January 20, 2011, authorizing and approving a
settlement agreement by and among the bankruptcy estate, EVB, William H. Talley I, LLC
("Talley") and Smurfit-Stone Container Corporation ("Smurfit-Stone") pursuant to Bankruptcy
Rule 9019 (the "9019 Order").  A hearing on the Motion was conducted on October 5, 2011, at
which the Court granted the relief requested by the Trustee.  This memorandum opinion sets
forth the Court's findings of fact and conclusions of law in support of that ruling in accordance
with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)
and 1334 and the general order of reference from the United States District Court for the Eastern
District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C.
§ 157(b)(2)(A) in which final orders or judgments may be entered by a bankruptcy court.  Venue
is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[1]  Federal Rule of Civil Procedure 60(b) shall hereafter be referred to as "Rule 60(b)" unless otherwise specified.

[2]  Rule 9014(c) of the Federal Rules of Bankruptcy Procedure makes Rule 7052 of the Federal Rules of Bankruptcy
Procedure applicable to this contested matter.  Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

## FACTS

Lewis Road, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 20, 2009 (the "Petition Date").  The Debtor retained control over the property of the estate and continued to operate the Debtor's business as Debtor-in-Possession in accordance with §§ 1107 and 1108 of the Bankruptcy Code.[3]  The Debtor's sole assets were two adjoining parcels of real estate located at 5700 and 5690 Lewis Road in Sandston, Virginia (together, the "Property").  As of the Petition Date the Property was leased to Smurfit-Stone.  Two deeds of trust encumbered the Property.  EVB held two promissory notes in the amounts of $1,025,000 and $575,000 that were secured by a first-priority deed of trust lien on the Property (the "Senior Claim").  Talley held a promissory note in the amount of $500,000 that was secured by a second priority deed of trust lien on the Property (the "Junior Claim").[4]

On December 29, 2009, the Debtor filed an application to employ the law firm of Ayers & Stolte, P.C. ("Ayers & Stolte") as counsel for the Debtor in Possession pursuant to § 327(a) of the Bankruptcy Code (the "Application").  The Application provided that Ayers & Stolte would receive $20,000 for its services, and also stated that:

> Proposed counsel has connections with the debtor (including prepetition advice concerning the debtor's financial situation and the preparation and filing of its chapter 11 petition *and connections with a creditor*.  This potential conflict of interest has been waived and proposed counsel has no connections with any other

---

[3]  Unless otherwise specified, all code sections referenced in this opinion are sections from Title 11 of the United States Code.  11 U.S.C. §§ 101 *et seq.* (2011) (the "Bankruptcy Code").

[4]  After the Chapter 11 Trustee was appointed in this case, an unscheduled creditor, E. Carlton Wilton, commenced an adversary proceeding wherein he alleged that he was the holder of a note that was secured by a deed of trust lien on the Property that had priority over the deed of trust lien of Talley.  *Wilton v. Lewis Road LLC, et al,*. Adversary Proceeding No. 11-03206 (Bankr. E.D. Va. Aug. 26, 2011).  By order entered September 26, 2011, this Court granted Talley's motion for summary judgment and dismissed the complaint in the Adversary Proceeding.  The Court subsequently entered an order on November 29, 2011, allowing the late filed claim of E. Carlton Wilton as a non-priority, general unsecured claim against the bankruptcy estate in the amount of $1,041,250.86.

party in interest, nor their respective attorneys and accountants, the United States
Trustee, and any person employed in the office of the United States Trustee.

Application to Approve Employment of Counsel for the Debtor in Possession, *In re Lewis Road,*

*LLC*, No. 09-37672 (Bankr. E.D. Va. Dec. 29, 2009) (emphasis added).    Although the

Application indicated that the verified statement required of proposed counsel under Federal

Rule of Bankruptcy Procedure 2014 was attached as an exhibit, no such verified statement was

submitted to the Court.[5]    Ayers & Stolte did not provide with its Application any information

concerning the identity, nature, or scope of its "connections with a creditor" nor did it provide

any information concerning the waiver of the "potential conflict."    An order approving the

Application was not entered until December 20, 2010, almost a year after the Application was

submitted.[6]

The lease between the Debtor and Smurfit-Stone expired on December 15, 2010.

Smurfit-Stone elected not to renew the lease.[7]    The lease required Smurfit-Stone either to remove

the improvements that it had made to the Property or to deed those improvements over to the

Debtor at the end of the lease term.    Compliance with this requirement was complicated by the

discovery of the fact that a portion of the building Smurfit-Stone had constructed on the Property

was actually located on a separate parcel owned by Smurfit-Stone adjoining the Property (the

"Smurfit-Stone Property).    Following a demand by the Debtor that Smurfit-Stone remove the

---

[5]    Proposed counsel attached the official form required by Rule 2016(b) of the Federal Rules of Bankruptcy
Procedure that is required to be filed with the petition. *See* Local Bankruptcy Rule 2016-1.    But it did not attach or
otherwise file the verified statement of the person to be employed setting forth the person's connections with the
debtor, creditors, any party in interest, their respective attorneys and accountants and the United States Trustee as
required by Rule 2014 of the Federal Rules of Bankruptcy Procedure.

[6]    No hearing was ever scheduled on the Application and it does not appear that notice of an opportunity to object to
the entry of the proposed order was ever given to creditors or parties in interest.

[7]    This came at no surprise as Smurfit-Stone had filed its own petition for reorganization under Chapter 11 of the
Bankruptcy Code in Wilmington, Delaware, on January 27, 2009.

building and return the Property to its original condition, the Debtor and Smurfit-Stone entered

into an agreement (the "Settlement Agreement"), in which Smurfit-Stone agreed to transfer the

Smurfit-Stone Property to the Debtor, pay the Debtor the sum of $350,000, and make certain

repairs to the building.

EVB and Talley were also parties to the Settlement Agreement.  The Settlement

Agreement provided for the distribution of the $350,000 settlement payment as follows:

> (i) $250,450.82 was to be paid to EVB on account of its attorneys fees and expenses, late charges, accrued and unpaid interest, and other charges and expenses provided for under the applicable loan documents, with any remaining funds to be applied to outstanding principal;

> (ii) $74,549.18 was to be paid to Talley on account of its attorneys fees and expenses incurred in connection with the negotiations with Smurfit-Stone; and

> (iii) $25,000 was to be paid to the Debtor and to be held in its debtor-in-possession account for maintenance and related matters with respect to the Property and for quarterly U.S. Trustee fees.

Motion for Entry of Order Approving Agreements, *In re Lewis Road, LLC*, No. 09-37672

(Bankr. E.D. Va. Dec. 22, 2010).  The Court conducted a hearing on January 19, 2011, to

consider the Debtor's motion for approval of the Settlement Agreement under Rule 9019 of the

Federal Rules of Bankruptcy Procedure.[8]  The Court granted the motion and approved the

Settlement Agreement in its 9019 Order entered January 20, 2011.[9]

After entry of the 9019 Order, the Debtor received an offer to purchase the Property for

$2,700,000 from NYW Enterprise, LLC (the "Purchaser").  A hearing was scheduled for April

20, 2011, to obtain Court approval of the sale.  This relatively routine proceeding took an

---

[8]  The Court's docket notes for the January 19 hearing to consider approval of the Settlement Agreement indicate that both Alexander Ayers and Charles Ayers from the firm Ayers & Stolte appeared on behalf of the Debtor.

[9]  It is paragraph 5(b)(ii) of this order from which the Trustee seeks relief under Rule 60(b).

unexpected turn when the United States Trustee informed the Court that Ayers & Stolte was representing not only the Debtor but also the holder of the Junior Claim, Talley, in connection with the Debtor's bankruptcy case. Upon examination by the Court, Alexander Ayers confirmed that both he and Charles Ayers were employed by Ayers & Stolte. He further advised the Court that Charles Ayers had been representing Talley in the bankruptcy case while he was representing the Debtor. The dual representation included the negotiation of the Settlement Agreement that the Court had just recently approved, and specifically the negotiation of the agreements between Talley and the Debtor that were embodied in paragraph 5(b)(ii) of the Court's 9019 Order.

Alexander Ayers explained that his father had not yet been retained to represent Talley when Ayers & Stolte submitted its Application to employ the firm, and he expressed the opinion that he did not believe that he needed to disclose the relationship between his firm and Talley or to disqualify himself because "everyone was working together to achieve a positive resolution to this matter." Transcript of Hearing on Motion to Sell, *In re Lewis Road, LLC*, No. 09-37672 (Bankr. E.D. Va. Apr. 20, 2011). Counsel for EVB informed the Court that while he was aware of the conflict and concerned by it, he had been led to believe that Ayers & Stolte had received an opinion from the Virginia State Bar permitting the joint representation with the consent of the parties involved.

At the conclusion of the April 20, 2011, hearing, the Court approved the sale of the Property to the Purchaser and the release of a portion of the sale proceeds in the amount necessary to satisfy the Senior Claim of EVB. The Court directed that the remaining sales proceeds were to be held in escrow by counsel for EVB pending further order of the Court. The Court scheduled an evidentiary hearing for May 25, 2011, for the Debtor to show cause why the

5

Court should not appoint a Chapter 11 Trustee in the case. *See* Order Approving Sale of Real Property Free & Clear of all Liens and Granting Related Relief, *In re Lewis Road, LLC*, No. 09-37672 (Bankr. E.D. Va. Apr. 28, 2011).

Five days prior to the scheduled show cause hearing Alexander Ayers filed a letter response to the Court's April 28, 2011, order in which he stated that he was "completely taken by surprise by this issue" because the employment of Ayers & Stolte was approved by the Court and because both he and Charles Ayers, "both members of Ayers & Stolte, appeared in front of [the] Court at a previous hearing, whereby [Alexander Ayers] represented the Debtor and [his] father represented W. Harold Talley I, LLC, a creditor." Letter Filed by Alexander Hamilton Ayers, *In re Lewis Road, LLC*, No. 09-37672 (Bankr. E.D. Va. Mar. 20, 2011). Alexander Ayers then stated that he had informed the Court of the connection between his firm and Talley in his Application to employ in which "[he] informed the Court . . . that [his] firm had connections with a creditor and that this potential conflict was waived by all parties." *Id.* The Court was not impressed with this response.[10] The Court was disappointed by the fact that Ayers & Stolte had not immediately withdrawn as counsel for Talley when the Court brought the conflict to the firm's attention at the April 20, 2011 hearing. When Ayers & Stolte presented no evidence at the hearing conducted on May 25, 2011, the Court directed the United States Trustee to appoint a

---

[10] Given the firm's explanation at the April 20, 2011, hearing that the firm's failure to disclose the joint representation was because Charles Ayers had not yet been retained to represent Talley when Ayers & Stolte submitted its Application to employ the firm, and given the very oblique reference in the Application to some "connection with a creditor," and given that no verified statement was ever filed by the firm as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure, and given that no supplemental disclosure was ever filed, and given that an actual conflict of interest existed when the parties negotiated the Settlement Agreement which conflict could not be waived, and given the firm's continuing duty to disclose connections under Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, the Court found the suggestion that the Court was somehow put on notice of the firm's joint representation to be disingenuous.

Chapter 11 Trustee.  Augustus C. Epps, Jr. was appointed as the Chapter 11 Trustee the next day (the "Trustee").

On July 6, 2011, Ayers & Stolte filed an Application for Compensation requesting that the Court approve the payment of $18,252.50 in fees and $1,096 in expenses for its representation of the Debtor in this case.  Both the Trustee and the United States Trustee filed objections to the Application for Compensation, citing, *inter alia*, Ayers & Stolte's failure to properly disclose the conflict created by its dual representation of the Debtor and Talley, the payment of $74,549.18 to Ayers & Stolte pursuant to the Settlement Agreement,[11] and allegations that a substantial portion of the $74,549.18 authorized by the Court in its 9019 Order to be paid to Talley was for legal services unrelated to the settlement.  The Trustee also filed the Rule 60(b) Motion that is currently before the Court seeking relief from that provision of the 9019 Order authorizing the payment of $74,549.18 to Talley for its attorneys' fees and expenses.

Although Ayers & Stolte withdrew the Application for Compensation with prejudice, it continued to contest the Rule 60(b) Motion.  An evidentiary hearing was held on October 5, 2011, at which significant additional information came to light.  First, the Trustee presented the Court with a Loan Participation and Servicing Agreement (the "Participation Agreement") dated December 2, 2008, indicating that Charles Ayers held a one-third participation interest in the Debtor's secured obligation to Talley.

Next, the trustee raised issues concerning the disbursement of funds authorized by the Court's 9019 Order approving the Settlement Agreement.  The Trustee testified that the $74,549.18 that the Court had authorized to be paid to Talley had in fact been paid directly to

---

[11]  This is the first occasion upon which the Court was advised that the payment it had authorized in its 9019 Order to be made to Talley for reimbursement of its legal fees was in actuality a direct payment to Ayers & Stolte.

Ayers & Stolte.  Furthermore, the payment had been made to Ayers & Stolte without Talley's

knowledge or consent.  The Trustee testified that $30,266 of the $74,549.18 payment to Ayers &

Stolte (which was supposed to reimburse Talley for fees it had incurred negotiating the

Settlement Agreement) was for prepetition collection work the firm had performed on behalf of

Talley in an attempt to enforce the Debtor's obligation to Talley.  The Trustee also testified that

Ayers & Stolte retained the $25,000 payment which the Court had ordered was to be held by the

Debtor in its debtor-in-possession account and used by the Debtor for maintenance and to pay

the United States Trustee's fees.  Not only did this violate the express terms of this Court's 9019

Order approving the Settlement Agreement, but it also resulted in an underpayment to the United

States Trustee of the fees that the Debtor was required to make to that office.[12]

The Trustee then called into question the veracity of the time records that Ayers & Stolte

submitted to the Trustee in support of the $74,549.18 payment the firm had received in its

undisclosed capacity as counsel to Talley.[13]  The Trustee observed that the motion to approve the

Settlement Agreement which provided for the $74,549.18 payment in the first instance was filed

with the Court on December 22, 2010.  However the time records reflected billing entries

through January 28, 2011.  A total of $10,436.25 in fees was incurred after the motion seeking

approval was filed with the Court.  This suggested to the Trustee that the time records had been

reconstructed after the fact in order to justify the earlier payment.  Finally, the Trustee testified

that the check payable to Ayers & Stolte was issued from a trust account of Ayers & Stolte on

---

[12]  Ayers & Stolte claims that the funds had been held in the firm's trust account, but no evidence of this fact was
introduced at the hearing.  The Court was provided with copies of two conflicting ledgers maintained by the firm
that purported to account for disbursements made by Ayers & Stolte of the funds it was holding.  The Court was
unable to reconcile the disbursements from these inconsistent accountings.

[13]  The Court notes that the fees Ayers & Stolte charged Talley for negotiating the Settlement Agreement were
roughly four times the amount that the firm had submitted in the detailed fee application it filed with the Court on
July 6, 2011, for all the work it had performed on behalf of the Debtor for the duration of the Chapter 11 case.

January 13, 2011.  However, the Court's 9019 Order approving the Settlement Agreement and authorizing that payment was not entered until January 20, 2011.

Following the Trustee's testimony, Alexander Ayers admitted on the record that the $25,000 that was supposed to be distributed to the Debtor in accordance with the Court's 9019 Order approving the Settlement Agreement was never placed in the Debtor's debtor-in-possession account.  He also confirmed that Charles Ayers did have a participation interest in the secured obligation owed to Talley.  Alexander Ayers did not provide any evidence to refute any of the Trustee's testimony.

## ANALYSIS

The Trustee requests relief from paragraph 5(b)(ii) of the 9019 Order authorizing the distribution of $74,549.18 to Talley in payment of its attorneys' fees and costs, under either Rule 60(b)(3) or (b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 9024.  "Because Rule 60 is an exception to the general policy favoring finality of judgments, relief is granted only to prevent what would otherwise be a clear miscarriage of justice."  *In re Jason*, 2005 Bankr. LEXIS 2833, at *14 (Bankr. E.D. Va. 2005) (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)).  In order to obtain relief under Rule 60(b), the moving party must satisfy a four-part threshold test requiring the movant to demonstrate: (1) the timeliness of the motion; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances.  *Dowell,* 993 F.2d at 48 (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)).  Once a party has satisfied this threshold test, it must then satisfy one of the six grounds for relief enumerated in Rule 60(b).  *Id.*

## Threshold Issues

<u>Timeliness</u>

Rule 60(c) states that "a motion under Rule 60(b) must be made within a reasonable time," and specifies that a motion under Rule 60(b)(1), (2), or (3) may be brought "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). Here, the 9019 Order was entered on January 20, 2011. The Trustee was not even appointed until May 26, 2011. The Trustee filed his motion for relief on August 12, 2011. As the motion for relief under Rule 60(b) was filed less than eight months after entry of the 9019 Order and within the one year time limit imposed on motions for relief under Rule 60(b)(1), (2), or (3), and as the Trustee filed his request for relief less than 3 months after his appointment, the Court finds that the Trustee's motion for relief under Rule 60(b) was made "within a reasonable time" and is, therefore, timely.

<u>Prejudice</u>

The Fourth Circuit has stated that the kind of prejudice that accompanies any vacated judgment, including the protraction of litigation, the time and expense of a new trial, the loss of post-judgment interest, and the loss of leverage in settlement discussions, does not constitute prejudice as contemplated by Rule 60(b). *Buffalo Wings Factory, Inc. v. Mohd*, 2008 U.S. Dist. LEXIS 48250, at *11 (E.D. Va. June 23, 2008) (citing *Werner*, 731 F.2d at 207). In this case, the Trustee's Rule 60(b) Motion only seeks relief from paragraph 5(b)(ii) of the 9019 Order providing for the payment of Talley's attorneys' fees and costs. No party to the 9019 Order other than Talley and Ayers & Stolte will be affected by the relief requested by the Trustee's Motion. Talley does not object to the Trustee's Motion. The sole burden imposed on an "opposing party" in this case would be on Ayers & Stolte for the return of the $74,549.18 it

received in attorneys' fees.  This falls squarely within the "kind of prejudice that accompanies any vacated judgment" of this nature.  The Court, therefore, finds that granting relief under Rule 60(b) would not result in unfair prejudice to the opposing party.

Exceptional Circumstances

At the time the 9019 Order approving the Settlement Agreement was entered, the Court was unaware of Ayers & Stolte's concurrent representation of both the Debtor and Talley.  The Court was also unaware of Charles Ayers' one-third participation interest in the secured obligation owed to Talley.  This lack of awareness resulted from the failure of Ayers & Stolte to properly disclose, as it had a duty to do, the connections it had with the creditors and other parties in interest of the bankruptcy estate and its failure to file the verified statement required by Rule 2014.  Had the Court been aware of these connections, the Court would not have entered the 9019 Order.   The Court finds that this situation rises to the level of "exceptional circumstances" as contemplated by Rule 60(b).  *See Montgomery Ward Comprehensive Health Care Plan v. Layne*, 1996 U.S. App. LEXIS 18174, at * 15-16 (4th Cir. July 23, 1996) (unpublished) (finding that exceptional circumstances existed because "the district court did not have an opportunity to review the document before deciding to deny the injunction.  The court, therefore, made its original decision based on assurances from an adverse party, assurances that ultimately proved to be wrong.").

For the reasons set forth immediately below, the Court finds that the Trustee has a meritorious defense.  Accordingly, the Trustee has satisfied the threshold test under Rule 60(b).  The Court now turns to the specific grounds for relief under Rule 60(b)(3) and (b)(6).

11

**Rule 60(b)(3)**

Rule 60(b)(3) permits a court to relieve a party from a final judgment, order, or proceeding for fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. Pro. 60(b)(3). To obtain relief, a party (i) must have a meritorious defense, (ii) must have been prevented from fully presenting the defense before entry of the order, and (iii) must have been so prevented because of the adverse party's fraud, misrepresentation, or misconduct. *See Green v. Foley*, 856 F.2d 660, 665 (4th Cir. 1988) (citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)). In considering these requirements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts." *Id.*

Meritorious Defense

"The purpose of the meritorious defense requirement is to ensure that granting relief from the judgment under Rule 60(b) would not 'in the end be a futile gesture.'" *Buffalo Wings Factory, Inc.*, 2008 U.S. Dist. LEXIS 48250, at *12 (citing *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990)). After careful consideration of the pleadings filed by the parties and the testimony presented during the October 5, 2011, hearing, the Court finds that the Trustee has asserted a meritorious defense.

The employment of attorneys by a bankruptcy trustee is governed by § 327 of the Bankruptcy Code, which is intended to ensure "that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994). Section 327(a) permits a trustee, with the Court's approval, to employ attorneys or other professionals that (1) do not hold or represent an

12

interest adverse to the estate and (2) are disinterested persons to represent the trustee or assist the

trustee in carrying out the trustee's duties under the title.[14]  11 U.S.C. § 327(a).

The Bankruptcy Code defines a "disinterested person" as a person that

> (A) is not a creditor, an equity security holder, or an insider;

> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

While the Bankruptcy Code does not define an "interest adverse to the estate,"

bankruptcy courts have widely held that an adverse interest means either (1) the possession or

assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or

create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of

bias against the estate.  *See, e.g., In re Circle T Pipeline, Inc.*, 2011 Bankr. LEXIS 2490, at *28-

29 (Bankr. W.D. Va. April 27, 2011), *In re Johnson*, 312 B.R. 810, 821 n.8 (Bankr. E.D. Va.

2004), *In re Mercury*, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002), *In re Granite Partners, LP*, 219

B.R. 22, 33 (Bankr. S.D.N.Y. 1998).  An "actual dispute" has been further defined as "active

competition between two interests, in which one interest can only be served at the expense of the

other."  *In re Johnson*, 312 B.R. at 822 (citing *In re BH & P Inc.*, 103 B.R. 556, 563 (Bankr. D.

N.J. 1989), *aff'd* 949 F.2d 1300 (3d Cir. 1991)).

---

[14]   Under 11 U.S.C. § 1107(a), a Chapter 11 Debtor-in-Possession has the same rights, duties and powers as a trustee.  The employment of attorneys and other professionals by a Debtor-in-Possession is thus subject to the requirements of § 327.

Section 327(c) of the Bankruptcy Code provides a limited exception to the strict requirements of § 327(a), stating that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). The representation of a creditor, therefore, does not *per se* disqualify a party from representing a trustee or debtor-in-possession, but rather requires the Court to conduct an inquiry into whether the concurrent representation of a trustee or debtor-in-possession would create an actual conflict of interest. *See In re Johnson*, 312 B.R. at 820, *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316 (10th Cir. 1994), *In re American Printers & Lithographers, Inc.,* 148 B.R. 862 (Bankr. N.D. Ill. 1992) (actual conflict existed where debtor's counsel would necessarily have to negotiate with its other client, a secured lender).

Section 327 is implemented by Rule 2014 of the Federal Rule of Bankruptcy Procedure ("Rule 2014"). This rule requires a trustee or debtor-in-possession to disclose in an application for employment "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014. Rule 2014 also requires that "[t]he application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." *Id.*

"The duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the

14

court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. N.D. Del. 2005). Disclosures made pursuant to Rule 2014 "must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Circle T Pipeline, Inc.*, 2011 Bankr. LEXIS 2490, at *33 (quoting *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001)). "[D]ebtors-in-Possession and their attorneys, whose employment is sought to be approved, [must] be meticulous in disclosing 'all connections' with the debtor and other parties in interest, and the failure to do so [justifies] a Court's taking significant punitive or corrective action." *Id.*

The Court finds that the concurrent representation of the Debtor and Talley by Ayers & Stolte in connection with this case violates the requirements of both § 327 and Rule 2014 as well as the implicit requirement that counsel for a Debtor-in-Possession "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *See Rome v. Braunstein*, 19 F.3d at 58.

Turning to the requirements of § 327(a), Ayers & Stolte was not a "disinterested person" as defined by § 101(14). First, Charles Ayers, a member of Ayers & Stolte, was a creditor of the estate due to his one-third participation interest in the secured obligation owed to Talley. Second, Ayers & Stolte was a creditor of the estate as evidenced by the $30,266 balance reflected in its time records for the prepetition work it had undertaken on behalf of Talley to collect the Junior Claim. By literal operation of § 101(14)(A), which plainly states that a disinterested person "is not a creditor," Ayers & Stolte was not a disinterested person and was not eligible to serve as counsel for the Debtor.

15

Furthermore, Ayers & Stolte's concurrent representation of the Debtor and Talley caused it to have an "interest materially adverse to the interest of the estate," as it asserted on behalf of Talley an economic interest that created an actual conflict with the estate.  At the time the Settlement Agreement was negotiated, the Debtor's only asset was the Property against which EVB and Talley asserted liens.  Once the Senior Claim of EVB was satisfied, the Debtor and Talley were in direct competition for the remaining assets of the estate.  Ayers & Stolte was thus in a position of attempting to maximize the value of Talley's recovery from the estate while simultaneously attempting to preserve as much of the estate as possible for the Debtor's unsecured creditors.  Additionally, any value the Debtor might have been able to retain for the benefit of its unsecured creditors at the expense of Talley came directly out of the pocket of Charles Ayers by virtue of his one-third participation interest in the secured obligation owed to Talley.  It is difficult to fathom a more clear illustration of an "active competition between two interests, in which one interest can only be served at the expense of the other."

In addition to failing to satisfy the requirements of § 327(a), Ayers & Stolte failed to comply with the disclosure requirements of Rule 2014 that would have brought these conflicts to light at the beginning of the case.  While Rule 2014 requires that a proposed counsel's application for employment state "to the best of the applicant's knowledge, all of the person's connections" with creditors, Ayers & Stolte's Application to Employ simply states that "[p]roposed counsel has . . . *connections with a creditor*" (emphasis added).  Ayers & Stolte did not disclose with whom it held connections nor did it describe what those connections were in its Application.  It compounded the problem through its failure to file the required verified statement of the person seeking employment.

16

At the hearing conducted on April 20, 2011, Alexander Ayers represented to the Court that at the time that the Application to employ was submitted, Ayers & Stolte had not yet been engaged to represent Talley.  Transcript of Record, *In re Lewis Road, LLC*, No. 09-37672 (Bankr. E.D. Va. Apr. 20, 2011).  The implication of this statement is that no disclosure was needed because the actual conflict created by the concurrent representation of the Debtor and Talley had not yet arisen.[15]  However, the time records later submitted by Ayers & Stolte relating to its representation of Talley indicate otherwise.  The billing records show that the firm was engaged to represent Talley on or before September 23, 2009.  Eight billing entries are detailed between this date and the submission of the Application to employ on December 29, 2009.  The Court, therefore, finds that Ayers & Stolte did in fact represent both the Debtor and Talley at the time the Application to employ was filed with the Court.  Ayers & Stolte had an obligation to disclose this connection in their Application.  Additionally, Ayers & Stolte had a duty to disclose the one-third participation interest that Charles Ayers held in the secured obligation owed to Talley.

These connections were not unknown to Ayers & Stolte at the time it filed its Application.  The failure of Ayers & Stolte to make the requisite disclosures was not inadvertent. The purported "disclosure" that was made was woefully inadequate and not in compliance with the requirement that the disclosure be "explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Circle T Pipeline, Inc.*, 2011 Bankr. LEXIS 2490 at *33.  This lack of proper disclosure alone warrants the firm's disqualification from the case.  *In re Midway Indus. Contractors, Inc.*, 272 B.R. at 664

---

[15] This argument then begs the question: to what connections was Ayers & Stolte referring in its Application?

("[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice.").

While § 327(c) creates an exception to § 327(a) and does not require the automatic disqualification of a party "solely because of such person's employment by or representation of a creditor," the party may still be disqualified if a creditor or the United States Trustee objects and the Court determines that the representation creates an actual conflict of interest.  Here, the United States Trustee has in fact objected to Ayers & Stolte's representation of the Debtor, and, as discussed *supra,* this Court finds that Ayers & Stolte's representation of both the Debtor and Talley in this case created an actual conflict.  Ayers & Stolte may not rely on § 327(c) to permit the dual representation of the Debtor and Talley in the same case.

Ayers & Stolte attempts to justify its concurrent representation of the Debtor and Talley on the grounds that both clients waived the conflict.  In its response to the objections of the Trustee and the United States Trustee to its Application for Compensation, Ayers & Stolte stated that an employee of the firm contacted the Virginia State Bar "to inquire whether this potential conflict was waivable and was informed that it was waivable as long as consent was granted from both Debtor and Talley in writing."  Response to Objections of the United States Trustee and the Chapter 11 Trustee to the Final Fee Application for Compensation for Debtor's Counsel, *In re Lewis Road, LLC*, No. 09-37672 (Bankr. E.D. Va. Aug. 19, 2011).  Ayers & Stolte maintains that it obtained this waiver from the Debtor and Talley and that the concurrent representation was therefore permissible.[16]

---

[16] While Ayers & Stolte maintains that the Debtor and Talley both executed a written waiver of the conflict, a copy of this document was never provided to the Court.

18

This argument fails for two reasons. First, this was not a "potential conflict" waivable under the Virginia Rules of Professional Conduct. As discussed *supra,* this was an actual conflict created by the concurrent representation of two parties with competing interests in the same case. Virginia Rule of Professional Conduct 1.7(b) unequivocally prohibits this representation, as it states that

> Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if each affected client consents after consultation, and . . .
>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

Va. R. of Prof'l Conduct 1.7 (2010). Any waiver that Ayers & Stolte may have received is completely ineffective.

Second, even if the conflict was waivable under the Virginia Rules of Professional Conduct, Ayers & Stolte must independently satisfy the requirements of § 327. See *In re Wynne Residential Asset Mgmt., LLC*, 2009 Bankr. LEXIS 4164, at *16 (Bankr. W.D.N.C. Dec. 18, 2009) ("As worthy and useful as that rule may be, the state procedure does not supplant 11 U.S.C. § 327 in a bankruptcy case."). Any waiver of the conflict required written notice to all parties in interest in the case and the approval of the bankruptcy court. *Id.* These requirements were not met. Although a proper waiver under Virginia Rule of Professional Conduct 1.7 may forestall prosecution under Virginia ethics rules, it does not excuse a violation of § 327. As such, Ayers & Stolte may not rely on this defense.

The Court finds Ayers & Stolte violated the requirements of § 327 and failed to properly disclose its connections with Talley pursuant to Rule 2014. The Trustee has established that he has a meritorious defense.

<u>Prevented From Presenting</u>

The party seeking relief must have been prevented from fully presenting the meritorious defense before the order was entered.  At the time the Court entered the 9019 Order on January 20, 2011, the Court was not aware of either counsel's concurrent representation of both the Debtor and Talley or of the one-third participation interest that Charles Ayers held in the secured obligation owed to Talley.  The Court was not informed of these facts until April 20, 2011.  This lack of knowledge is not attributable to a failure to properly investigate.  The Application to Employ filed by Ayers & Stolte failed to properly list the firm's connections with creditors and other parties in interest in the case.  All parties in interest were entitled to rely on this disclosure.  The meritorious defense could not have been fully presented prior to the entry of the 9019 Order.

<u>Fraud, Misrepresentation, or Misconduct</u>

The party seeking relief must have been prevented from fully presenting the meritorious defense before the entry of the order due to the adverse party's fraud, misrepresentation, or misconduct.  As a predicate matter, both the Trustee and Ayers & Stolte address the question whether actions by counsel can constitute "fraud, misrepresentation, or misconduct by an opposing party."  While the Trustee dutifully disclosed adverse case law indicating that counsel are not considered to be an opposing party for the purposes of Rule 60(b)(3), these cases are distinguishable in that the movants in the disclosed cases sought relief due to errors of their own counsel rather than counsel for opposing parties.  *See Sherman v. Verizon Virginia Inc.*, 220 F.R.D. 260, 262 (E.D. Va. 2002) ("Plaintiff's former counsel is not an "adverse party" within the plain meaning of Rule 60(b)(3). . . . In short, defendant, the "adverse party" contemplated by Rule 60(b)(3), and not plaintiff's own attorney, must be the author of any fraud, misrepresentation, or misconduct for which the provisions at issue may provide a remedy."),

20

*Buffalo Wings Factory, Inc.*, 2008 U.S. Dist. LEXIS 48250, at *10 (stating that where a defendant sought relief under Rule 60(b), the "Defendant's 'former counsel is not an 'adverse party' within the plain meaning of Rule 60(b)(3)'").  Although Ayers & Stolte was serving as counsel for the Debtor-in-Possession when the 9019 Order was entered, it was also serving as counsel for Talley.  The Trustee is therefore proceeding against counsel for a creditor, which the Court considers to be sufficiently adverse to permit relief under Rule 60(b)(3).

But the Trustee can also proceed against Ayers & Stolte in its capacity as counsel for the Debtor.  The Fourth Circuit has recognized the special nature of bankruptcy proceedings, which often involve multiple parties, claims, and procedures.  *See McDow v. Dudley,* 2011 U.S. App. LEXIS 23809 (4th Cir. 2011).  Unlike counsel in non-bankruptcy proceedings which serves as an agent of a plaintiff or defendant, counsel for a debtor in possession is in its own right one of the multiple parties involved in a Chapter 11 case.  *See Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 BR 19, 26 (2nd Cir. BAP 1997) (stating that "counsel for the debtor in possession has fiduciary obligations not ordinarily foisted upon the attorney-client relationship"), *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir. 1994).  In recognition of this special status, the Bankruptcy Code places very specific requirements and conditions on such counsel's employment.  Counsel for a debtor in possession can only be compensated "[a]fter notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329" of the Bankruptcy Code.  11 U.S. C. § 330(a).  Counsel for a debtor in possession is also charged with disclosure obligations concerning its connections with other parties in the case and concerning the compensation it receives in connection with the case.  Fed. R. Bankr. P. 2014 & 2016.

A trustee in a bankruptcy case serves a unique role. The trustee is a fiduciary charged with a duty to oversee the proper administration of the bankruptcy estate. 11 U.S.C. § 1107. *See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1986) (stating that a trustee's overarching duty is to maximize the value of the estate). This includes a duty to investigate the debtor's affairs. 11 U.S.C. § 1106(a)(3). In this regard a trustee is authorized to conduct examinations of debtor's counsel and to file any appropriate motion to have the court determine whether any postpetition payment made to an attorney was excessive. Fed. R. Bankr. P. 2017. Whereas in non-bankruptcy cases the parties generally "must by the pleadings be arrayed on opposite sides" for adversity to exist, s*ee, e.g., Gates Learjet Corp. v. Duncan Aviation*, 851 F.2d 303, 306 (10th Cir. 1998), any party to a bankruptcy case may find itself the target of an action brought by the bankruptcy trustee. Here, the Trustee is seeking to recover moneys wrongly paid to attorneys from the bankruptcy estate. The Trustee is sufficiently empowered to bring this action for relief from the 9019 Order. *See* 11 U.S.C. § 549(a).

Turning to the substance of this inquiry, the Court finds that Ayers & Stolte's failure to properly disclose its connections with Talley constitutes misrepresentation or misconduct. A misrepresentation is an incorrect statement of a past or subsisting fact. *Holland v. DePaulis (In re DePaulis)*, 2008 U.S. Dist. LEXIS 74396, at *29 (W.D.N.C September 26, 2008). The Fourth Circuit does not require a statement to be intentionally or knowingly inaccurate to constitute a misrepresentation. *Lane v. United States*, 286 F.3d 723, 731 (4th Cir. 2002) ("[B]y definition, fraud requires an intentional or knowing misrepresentation. (citation omitted). Thus, to construe the word 'misrepresentation' as limited to intentional or knowing misrepresentations would render that statutory term superfluous. This would ignore the basic principle of statutory interpretation instructing courts to 'avoid a reading which renders some words altogether

22

redundant.'"). The concept of misconduct is broader in scope than that of misrepresentation. It extends even to accidental errors or omissions. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) ("For the term to have meaning in the Rule 60(b)(3) context, it must differ from both 'fraud' and 'misrepresentation.' Definition of this difference requires us to take an expansive view of 'misconduct.' The term can cover even accidental omissions -- elsewise it would be pleonastic, because 'fraud' and 'misrepresentation' would likely subsume it.").

As discussed *supra*, Rule 2014 required Ayers & Stolte to disclose "to the best of the applicant's knowledge, all of the person's connections" with creditors and other parties in interest to the case, and to file a verified statement setting forth any such connections. This disclosure was required to be "explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Circle T Pipeline, Inc.*, 2011 Bankr. LEXIS 2490, at *33. The failure to submit a verified statement is a *per se* violation of Rule 2014. The Statement by Ayers & Stolte in its Application that it had "connections with a creditor" does not contain the detail sufficient to comply with Rule 2014. Regardless of any duplicitous intent on the part of Ayers & Stolte, the simple fact that this information was not provided as required causes the infraction to rise to the level of misconduct as defined by Rule 60(b)(3). *See Anderson v. Cryovac, Inc.*, 862 F.2d at 923 ("We think such a construction not overly harsh. . . . Accidents -- at least avoidable ones -- should not be immune from the reach of the rule.").

Ayers & Stolte's misrepresentation and misconduct prevented the meritorious defense from being presented to the Court prior to the entry of the 9019 Order. The Court finds that relief from paragraph 5(b)(ii) of the 9019 Order is appropriate under Rule 60(b)(3).

### Rule 60(b)(6)

Rule 60(b)(6) permits a court to relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A court may grant relief under this catch-all provision if "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). However, any relief granted under Rule 60(b)(6) must be based on a reason other than those enumerated in subclauses (1) - (5), and should only be granted in exceptional or extraordinary circumstances. *In re AMF Bowling, Inc.*, 2002 Bankr. LEXIS 1747, at *4 (Bankr. E.D. Va. Aug. 13, 2002).

The Court finds that there are good, independent bases for granting relief under Rule 60(b)(6) in addition to the relief granted under Rule 60(b)(3). First, the $74,549.18 payment to Ayers & Stolte for its representation of Talley had not been authorized by the Court at the time it was made. While the check payable to Ayers & Stolte in the amount of $74,159 was issued on January 13, 2011, the hearing on the Settlement Agreement was not held until January 19, 2011. The Court's 9019 Order was not entered until January 20, 2011.

Second, the Court does not accept the veracity of the time records that Ayers & Stolte submitted to the Trustee to justify the $74,549.18 fee it was awarded for its representation of Talley. The motion to approve the Settlement Agreement listing the specific fee amount of $74,549.18 was filed with the Court on December 22, 2010. A review of the time records that were later produced to substantiate this very specific figure show time entries made through January 28, 2011. Charges totaling $10,436.25 were made for work performed after the motion seeking approval of the Settlement Agreement was submitted to the Court. The Court can only conclude, as the Trustee suggested in his testimony, that the time records were fabricated after the fact to justify the amount charged to Talley.

24

Third the Court finds that Ayers & Stolte breached the terms of the 9019 Order when it retained the $25,000 that the Court had ordered be deposited into the debtor-in-possession account.  Paragraph 5(b)(iii) of the 9019 Order states that $25,000 of the settlement payment was to be distributed "to the debtor to be held in its debtor-in-possession account and to be used by the Debtor for maintenance and related matters with respect to the property and to pay quarterly U.S. Trustee fees."  Despite this explicit order, the money was held by Ayers & Stolte and was not transferred to the Debtor for deposit into its debtor-in-possession account.[17]  This violation of the Court's 9019 Order resulted in the underpayment of fees due to the Office of the United States Trustee.

Finally, the Court finds that the $74,549.18 fee paid to Ayers & Stolte violated the requirements of the Bankruptcy Code.  Under § 330, counsel for the Debtor is only entitled to be paid reasonable compensation for the actual and necessary services it performs.  In determining the amount of reasonable compensation to be awarded, a court must consider the nature, the extent, and the value of the services rendered.  11 U.S.C. § 330.  Counsel must file a detailed fee application in compliance with guidelines issued by the Office of the U.S. Trustee.  *See* 28 U.S.C. § 586(a)(3)(A).  The fee application must be reviewed and approved by the bankruptcy court.  11 U.S.C. § 330.  Furthermore, § 329 of the Bankruptcy Code and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure require counsel for the debtor to file a statement as to what payments counsel has received in any capacity whatsoever in connection with the case and the source of the compensation.  If the court finds such compensation exceeds the reasonable value of the services performed, the court may order the return of any payment.  Ayers & Stolte

---

[17]   As the Debtor was required to file monthly operating reports with the Court pursuant to Local Bankruptcy Rule 2015-1, depositing the money in the debtor-in-possession account would have provided safeguards and transparency over the disbursement of these funds.

failed to comply with any of these requirements with regard to the $74,549.18 payment it received as compensation for services rendered in connection with this case.

The Court therefore finds that the Trustee is entitled to relief from paragraph 5(b)(ii) of the 9019 Order under Rule 60(b)(6), as these bases are independent of any grounds for relief available under Rule 60(b)(1)-(5) and relief is necessary to ensure a just result in this case.

## CONCLUSION

Having determined that the Trustee is entitled to relief from paragraph 5(b)(ii) under both Rule 60(b)(3) and (b)(6), the remedy in this case is clear.  A professional serving a bankruptcy estate that is found to have a conflict of interest in violation of § 327 of the Bankruptcy Code is entitled to no compensation for its work.  11 U.S.C. § 328(c).  *See, e.g., In re Wynne Residential Asset Mgmt., LLC*, 2009 Bankr. LEXIS 4164 at *16; *In re eToys, Inc.*, 331 B.R. at 193 (ordering the disgorgement of fees where counsel failed to disclose actual conflicts).  Similarly, a professional is not entitled to compensation if it fails to disclose relevant connections as required by Rule 2014.  *See In re eToys, Inc.*, 331 B.R. at 190.  *See also In re Midway Indus. Contractors, Inc.,* 272 B.R. at 664

The Court will amend the 9019 Order to delete paragraph 5(b)(ii) allowing for the payment of Talley's attorneys' fees and costs in the amount of $74,549.18, and it will direct Ayers & Stolte to remit to the Trustee any money received for its representation of either the Debtor or Talley from any source in connection with this case.  The Court further directs Ayers & Stolte to remit to the Trustee the $25,000 that was required to be placed in the debtor-in-possession account pursuant to paragraph 5(b)(iii).  Once the Trustee has received a satisfactory accounting of the use and disbursement of these funds, the Trustee may apply to have the payments approved and the moneys reimbursed.

A separate order shall issue.


SO ORDERED: _____


_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE